IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

KEVIN STRICKLAND,                                  )
                                                   )
                    Plaintiff,                     )
                                                   )
v.                                                 )      Case No. 5:22-cv-6009
                                                   )
CORIZON, L.L.C.,                                   )      JURY TRIAL DEMAND
A Missouri Limited Liability Company,              )
Serve at: CT Corporation System                    )
120 South Central Avenue, Suite 400                )
Clayton, Missouri  63105,                          )
                                                   )
and                                                )
                                                   )
THOMAS BREDEMAN, M.D., Corizon                     )
Associate Regional Medical Director for            )
MDOC Contract,                                     )
in his individual capacity,                        )
Serve at: CT Corporation System                    )
120 South Central Avenue, Suite 400                )
Clayton, Missouri  63105,                          )
                                                   )
and                                                )
                                                   )
JOHN/JANE DOE #1, Corizon Regional                 )
Medical Director for MDOC Contract,                )
in his/her individual and official capacities,     )
Serve at: C T Corporation System                   )
120 South Central Avenue, Suite 400                )
Clayton, Missouri  63105,                          )
                                                   )
and                                                )
                                                   )
JOHN/JANE DOE #2, Corizon                          )
Medical Director for MDOC Western                  )
Missouri Correctional Center                        )
in his/her individual and official capacities,     )
Serve at: C T Corporation System                   )
120 South Central Avenue, Suite 400                )

Clayton, Missouri  63105,                              )
                                                       )
and                                                    )
                                                       )
JOHN/JANE DOE #3, Corizon Health                       )
Services Administrator for WMCC                        )
in his/her individual and official capacities          )
Serve at: C T Corporation System                       )
120 South Central Avenue, Suite 400                    )
Clayton, Missouri  63105,                              )
                                                       )
                                Defendants.            )

# COMPLAINT

COMES NOW Plaintiff, Kevin Strickland, by undersigned counsel, and for his

Complaint against Defendants Corizon L.L.C., Dr. Thomas Bredeman, John/Jane Doe #1,

John/Jane Doe #2, and John/Jane Doe #3, states and alleges as follows:

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues raised herein.

## PRELIMINARY STATEMENT

1. This is an action for damages brought to redress the deprivation under color of

state law of rights, privileges, and immunities secured to Plaintiff by provisions of the Eighth

Amendment to the United States Constitution, as applied to the States by the Fourteenth

Amendment, and by 42 U.S.C. § 1983.

2. Plaintiff alleges that while confined to the Crossroads Correctional Center

("CRCC") and the Western Missouri Correctional Center ("WMCC"), in the care, custody,

and control of the Missouri Department of Corrections ("MDOC"), he was denied timely

access to adequate and competent medical care for evaluation and treatment of serious

medical conditions.  As a direct and proximate result of Defendants' disregard of Plaintiff's serious medical conditions and accepted correctional medical practices, which were occasioned by Defendants under color of state law, not only has Plaintiff become physically impaired, but his physical condition has continued to deteriorate and he has experienced extensive pain and suffering.

3.  Missouri wrongfully imprisoned this innocent Plaintiff for forty-three (43) years, until his release on November 23, 2021.  Missouri's contracted medical provider, Defendant Corizon, LLC ("Corizon"), added to Plaintiff's suffering by depriving him of essential medical care for an obvious and serious medical condition.  That deprivation of constitutionally required medical care resulted in Plaintiff losing much of his mobility and now having to use a wheelchair.

4.  Plaintiff's injuries are the product of Defendants' collective promulgation, authorization, and/or adherence to departmental, institutional, and clinical policies, procedures, customs, and practices that not only result in a deliberate and systemic disregard for known, obvious, and excessive risks to inmate health and safety, but were also likely to culminate in delay in or denial of access to adequate medical care and treatment for Plaintiff. Those policies, procedures, customs, and practices are shocking to the conscience and evince the kind of arbitrariness and abuse of power that operates to deprive Plaintiff of his constitutional rights.

5.  Those policies, procedures, customs, and practices caused a continuing, persistent, and widespread pattern of official misconduct that comprises the moving force behind Plaintiff's injuries and evidences deliberate indifference to the health and safety of all

3

inmates confined to the WMCC in violation of the Eighth and Fourteenth Amendments of the United States Constitution.

**PARTIES**

6. Plaintiff, Kevin Strickland ("Strickland"), is a citizen of the United States and was, at all relevant times contemplated herein, an inmate in the custody of the MDOC. Strickland was born on June 7, 1959, and at the time of the filing of this Complaint, is 61 years old. He was previously confined to the CRCC and the WMCC, where he was transferred after the CRCC closed.

7. Defendant Corizon, f/k/a Correctional Medical Services ("CMS") and/or Corizon Health, Inc., is a duly organized Missouri Limited Liability Company. Corizon maintains a corporate office located at 12647 Olive Blvd., St. Louis, Missouri 63141 and its registered agent for service of process is CT Corporation System, located at 120 South Central Avenue, Suite 400, St. Louis, Missouri 63105. Upon information and belief, and at all relevant times contemplated herein, Corizon was under contract with MDOC ("MDOC/Corizon Contract") to provide comprehensive health care services and chronic care for inmates confined to MDOC correctional institutions, including the WMCC, where Strickland was confined and where the acts and omissions that gave rise to his claims occurred. In this capacity, while acting under the color of state law, Corizon not only promulgated official policies/procedures in furtherance of and incident to its performance of the MDOC/Corizon Contract, including those related to Utilization Management ("UM"), but it was also contractually required to train, supervise, direct, and control all medical and nursing personnel providing clinical services on its behalf.

4

8.  Defendant Thomas Bredeman, M.D. ("Bredeman") is a citizen of the United States and was, at all relevant times contemplated herein, an Associate Regional Medical Director for Corizon in Missouri.  As the Associate Regional Medical Director, and while acting under the color of state law, Bredeman not only reviewed/investigated medical grievance appeals filed by inmates and co-signed the official response to the same, but he also materially participated in Executive Continuous Quality Improvement ("CQI")  activities and personally made UM determinations by approving, denying, or deferring referral requests related to off-site specialty medical care for inmates confined to MDOC facilities, including Plaintiff.  Plaintiff brings suit against Bredeman in his individual capacity.

9.  Defendant John/Jane Doe #1 ("Doe #1") is a citizen of the United States and was, at all relevant times herein, the Regional Medical Director for Corizon in Missouri.  As the Regional Medical Director, and while acting under the color of state law, Doe #1 not only chaired the CQI Committee, directed statewide managed care and UM activities, and served as a primary corporate liaison to the MDOC Director of the Division of Offender Rehabilitative Services, but he/she also exercised final regional corporate decision-making authority over statewide institutional medical policies/procedures by personally and materially participating in the promulgation and approval of MDOC Institutional Services Policies and Procedures governing the administration and provision of health care services at MDOC facilities, including the WMCC.  Plaintiff brings suit against Defendant Doe #1 in both his/her individual and official capacities.

10.  Defendant John/Jane Doe #2 ("Doe #2") is a citizen of the United States and was, at all relevant times contemplated herein, the WMCC Medical Director for Corizon.  As the

WMCC Medical Director, and while acting under the color of state law, Doe #2 not only co-chaired the WMCC Medical Audit Committee ("MAC") and the WMCC CQI Committee, which control all aspects of healthcare delivery, but he/she also reviewed/investigated medical grievances filed by inmates and monitored referrals to off-site healthcare facilities to ensure compliance with internal Corizon UM and risk management policies/procedures. Doe #2 also exercised final corporate decision-making authority over WMCC medical policies/procedures by personally and materially participating in the promulgation and approval of WMCC Institutional Standards Standard Operating Procedures ("SOPs") governing the administration and provision of health care services at the site. Plaintiff brings suit against Defendant Doe #2 in his/her individual and official capacities.

11. Defendant John/Jane Doe #3 ("Doe #3") is a citizen of the United States and was, at all relevant times contemplated herein, the WMCC Health Services Administrator ("HSA") for Corizon. As the WMCC HSA, and while acting under the color of state law, Doe #3 not only co-chaired the WMCC MAC and WMCC CQI Committees with the WMCC Medical Director, but he/she also managed the medical unit budget, ensured on-site compliance with internal Corizon policies/procedures, including Corizon UM policies/procedures, and reviewed/investigated medical grievances filed by inmates. Doe #3 also exercised final corporate decision-making authority over WMCC medical policies/procedures by personally and materially participating in the promulgation and approval of WMCC Institutional SOPs governing the administration and provision of health care services at the site. Plaintiff brings suit against Defendant Doe #3 in his/her individual and official capacities.

12.  The acts and omissions of all Defendants herein which give rise to Plaintiff's claims were committed by them while acting under color of state law and the regulations, policies, procedures, practices, customs, and usages of Defendant Corizon and MDOC.

## JURISDICTION AND VENUE

13.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 1343.

14.  The Court has jurisdiction over Defendants because the unlawful acts alleged in this Complaint were committed in DeKalb County, Missouri, which as provided in 28 U.S.C. § 105(b), lies within the Western District of Missouri.

15.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the events, acts or omissions giving rise to Plaintiff's claims occurred in DeKalb County, Missouri, which as provided in 28 U.S.C. § 105(b)(3), lies within the St. Joseph Division of the Western District of Missouri.

16.  Plaintiff has exhausted his administrative remedies, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

## GENERAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

17.  The WMCC is a correctional institution located in Cameron, DeKalb County, Missouri that is owned, maintained, and operated by the MDOC.

18.  MDOC contracted with Corizon to provide health care services for inmates confined to Missouri's correctional facilities under the direction of MDOC staff.  The stated goals of the contract, which was in effect at all relevant times, were to "prevent disease and disability, or, when health conditions are already present, to prevent worsening of those

7

conditions" and to generally "ensure that inmates are provided appropriate health care[.]"

19. Pursuant to the terms of the MDOC/Corizon Contract, Corizon was obligated to:

a. provide comprehensive health care services in accordance with National Commission on Correctional Healthcare ("NCCHC") standards and prevailing medical practices;

b. comply with and adhere to MDOC departmental and institutional policies/procedures;

c. provide specialty medical care and treatment for clinical disciplines that include Neurology, Neurosurgery, Orthopedics, Physical Medicine, and General Surgery; and,

d. make determinations of medical necessity and appropriateness of services and treatment plans in accordance with nationally recognized, evidence-based criteria.

20. The MDOC/Corizon Contract required Corizon to exercise control over clinical personnel who provided medical services on its behalf by ensuring its personnel maintained proper credentials, worked their assigned hours, had the clinical tools they needed to do their work, received training as needed and/or mandated by their professional licenses, and that they were adequately supervised.

21. Pursuant to the terms of the MDOC/Corizon Contract, health care services at the WMCC were administered by Corizon and licensed clinical personnel acting on its behalf under the direction, supervision, and control of: Doe #1, the Corizon Regional Medical Director for the MDOC Contract; Doe #2, the Corizon Medical Director for the WMCC; and Doe #3, the Corizon HSA for the WMCC.

22. In addition to the obligations outlined in the MDOC/Corizon Contract, there were

8

at least ten sets/sources of MDOC institutional and internal Corizon corporate policies and procedures that informed and/or governed the provision of medical care and treatment at the WMCC. Upon information and belief, these sets/sources comprised:

    a. The MDOC "Institutional Services Policy and Procedure" Manual ("IS Manual") which includes Chapter 7 "Inmate Records" ("IS7"), Chapter 8 "Inmate Rights" ("IS8"), and Chapter 11 "Health Care Services" ("IS11");

    b. The MDOC Department Procedure Manual ("D Manual") which includes D5-3.2 "Offender Grievance" governing medical grievances filed by inmates;

    c. The MDOC WMCC "Institutional Standards – Standard Operating Procedures" ("WMCC SOPs");

    d. The Corizon Continuous Quality Improvement Program Manual ("CQI Manual");

    e. The Corizon Utilization Management Manual ("UM Manual");

    f. The Corizon Physician/Provider Information Program Manual ("PIP Manual");

    g. The Corizon Chronic Care Manual ("CCC Manual");

    h. The Corizon General Health Services Policy & Procedure Manual ("Health Services Manual");

    i. Corizon Nursing Protocols for Missouri; and,

    j. Internal Corizon policies/procedures labeled "Policy & Procedure" and organized by number, subject, and originating department (*e.g.,* Medical Affairs and Utilization Management).

9

23. The policies/procedures set forth in the MDOC IS Manual were jointly and cooperatively promulgated by MDOC and Corizon personnel. Each policy/procedure required MDOC and Corizon clinical personnel to promulgate and implement corresponding site-specific SOPs for each MDOC facility, including the CRCC and WMCC.

24. Chapter 11 of the IS Manual, IS11, governs all aspects of health care delivery in MDOC facilities. Each MDOC site also has corresponding site-specific standard operating procedures that implement the provisions in IS11 at the site level.

25. Pursuant to IS11-05, "Policies and Procedures," site-specific SOPs were also reviewed, approved, and signed by MDOC and Corizon personnel. All Corizon clinical personnel were required to review the IS Manual and the site-specific SOPs and sign an acknowledgment provided by the site HSA indicating they had done so.

26. All Corizon clinical personnel must comply with policies and procedures that are entirely promulgated, developed, and approved by Corizon corporate personnel. These policies and procedures include those listed in Paragraph 21(d) through 21(j), above.

27. Upon information and belief, the ten sets/sources of institutional and internal Corizon corporate policies and procedures listed in Paragraph 21, above were in effect and routinely observed at the CRCC and WMCC at the time Strickland sustained his injuries. Those policies/procedures operated to interfere with Strickland's right to care and treatment by:

    a. Denying, delaying, and deferring evaluation and treatment for his spinal stenosis and neurologic deficits; and,

    b. Allowing his physical agility and his ability to both ambulate and perform

10

activities of daily living deteriorate to the point where he has become confined to a wheelchair and can only stand for brief periods of time.

28.  Both the MDOC institutional policies and procedures and the internal Corizon corporate policies and procedures caused Strickland to suffer substantial loss of mobility and pain in violation of the Eighth Amendment.

29.  At a Doctor Encounter Appointment on February 14, 2017, Strickland was diagnosed with musculoligamentous back pain and possible mild tight hamstring syndrome. The physician recommended low stress/low impact activity, exercise, and Capsaicin. Strickland was advised to follow-up as needed.

30.  At another Doctor Encounter Appointment on May 4, 2017, after Strickland complained of difficulty walking from the Housing Unit to the Dining Room and worsening pain and numbness, the physician not only recommended exercise, stretching, and continued use of Capsaicin cream, but he also prescribed Trileptal, an antidepressant, and ordered a mental health evaluation.

31.  On June 15, 2017, Strickland had follow-up appointment with a physician, who noted no improvement and increased Strickland's Trileptal dose.

32.  On July 13, 2017, Strickland had the first of two self-declared emergencies at 6:30 a.m., complaining of worsening pain and numbness in his lower back and legs that make it hard for him to walk or do anything.  His condition was determined not to be emergent and he was instructed to follow the MSR process.

33.  Strickland had the second self-declared emergency that day at 12:15 p.m., when he was taken to the Medical Unit in a wheelchair because he could not walk.  Although his

condition was determined to be a medical emergency, the nurse noted that he had not declared an emergency within the previous 72 hours and that she would contact the on-call physician, who ordered a Toradol injection. Strickland was returned to his Housing Unit and instructed to return to Medical if his symptoms worsened.

34. On July 15, 2017, Strickland had another self-declared emergency, complaining of pain in his back. The nurse noted that he could not bend over, that he had numbness and tingling in his legs, and that he had limited ability to perform activities of daily living ("ADLs"). Strickland was given another Toradol injection and again instructed to return to Medical if his symptoms worsened.

35. At a Doctor Encounter Appointment on September 14, 2017, Strickland was also diagnosed with paresthesia in his legs.

36. Corizon clinical personnel at WMCC were not able to provide all medical treatment on-site. Certain medical conditions, including neurological conditions, required medical referrals to off-site specialists for assessment and treatment.

37. In a Referral Request for an electromyography test ("EMG") dated November 24, 2017, a site physician noted: "I HAD HIM STAND IN MY EXAM ROOM, AND AT 4 MINUTES HE STATED THAT THE PINS AND NEEDLES SENSATION (WHICH HAD STARTED AFTER ABOUT 2 ½ MINUTES) BECAME SO SEVERE HE STATED HE NEEDED TO SIT." The Referral Request was denied.

38. A second Referral Request, dated December 7, 2017, for an MRI to rule out spinal stenosis was also denied because, as the Corizon UM Department explained: "ADVANCED IMAGING SHOULD BE RESERVED FOR CASES THAT DO NOT

12

RESPOND TO CONSERVATIVE MANAGEMENT."

39. On January 12, 2018, Strickland was issued a lay-in for ground floor/lower bunk, handicap shower use, and a wheelchair with a pusher. He was also prescribed hydrocodone, an opioid, for pain.

40. The same patterns of denial and deferral of off-site evaluation and specialty care for Strickland's severe back pain and numbness in his lower extremities in favor of site-based conservative treatment modalities and alternate treatment plans not only persisted throughout 2018-2021, but they also rendered him unable to ambulate independently or perform ADLs as he did before his condition was allowed to deteriorate. These patterns also culminated in multiple related grievances that Strickland waged from Informal Resolution Request ("IRR") to Grievance Appeal.

41. Upon information and belief, Strickland received no medical-related conduct violations for faking symptoms or filing frivolous MSRs.

### COUNT I
### EIGHTH AMENDMENT
### DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED
### AND FAILURE TO PROVIDE MEDICAL CARE AND TREATMENT
### 42 U.S.C. § 1983
### Against Defendants Corizon, L.L.C., Doe #1, Doe #2, and
### Doe #3 in Their Individual and Official Capacities

42. Plaintiff hereby incorporates by reference paragraphs 1 through 41 as if fully set forth here.

43. Plaintiff continues to suffer from the unwarranted delay in the assessment and treatment of his neurologic deficits. His injuries – and the continuing nature of those injuries – are the product of official policies, procedures, practices and customs promulgated, tacitly

authorized, and/or observed by Defendants Corizon, Doe #1, Doe #2, and Doe #3.

44. Through their deliberate indifference to Plaintiff's serious medical needs, these Defendants subjected him to and engaged in conduct that deprived him of rights secured to him by the Eighth Amendment to the United States Constitution, as applied to the States by the Fourteenth Amendment.

45. Corizon's policies, procedures, practices, and customs – which included deliberate conduct and omissions of licensed clinical personnel that was so widespread and persistent as to represent official policy – recklessly disregarded substantial risks of serious harm to inmates, of which the Corizon Defendants were aware, and inflicted injuries actionable under 42 U.S.C. § 1983.

46. More specifically, the policies, procedures, practices, and customs the Corizon Defendants observed and/or tacitly authorized gave rise to actionable systemic deficiencies by, inter alia:

a. Utilizing conservative treatment methodologies unless or until a medical condition becomes emergent, in contravention of prevailing medical practices;

b. Continuing to utilize conservative treatment methodologies and alternative treatment plans for persistent conditions that have become emergent and require off-site specialty care;

c. Delaying, denying, and deferring off-site specialty medical care and treatment even when it is medically necessary and clinically indicated;

d. Failing to maintain adequate medical records by not maintaining complete records and not organizing hard-copy/paper and Medical Records Accountability

14

System ("MARS") records in a way that would permit medical and nursing personnel to utilize them effectively for diagnosis, treatment, and follow-up; and,

    e. Failing to assure staff competency, especially among physicians and nurses, including the establishment of policies, procedures, and processes to detect and respond to incompetency.

47. The five systemic deficiencies outlined in Paragraph 46 are the product of official policies, procedures, practices, and customs promulgated or tacitly authorized by MDOC and Corizon personnel vested with final decision-making authority in like matters – and all five caused or materially contributed to Strickland's injuries and the violation of his rights.

48. As a direct and proximate result of the violation of his civil rights by Corizon and Defendants Doe #1, #2, and #3, Plaintiff suffered the following injuries:

    a. He endured, and continues to endure, years of pain and a progressively degenerative physical condition that has robbed him of his ability to engage in physical activities, ambulate without an assistive device, and perform ADLs; and,

    b. He sustained, and continues to sustain, mental and emotional pain, anguish, and anxiety knowing that his physical ailment has not been treated, continues to deteriorate, and may result in a permanent loss of bodily function.

49. The Corizon Defendants' acts and omissions not only contemplate a conscious disregard of a substantial risk of serious harm to prisoner health and safety – which Defendants knew were highly likely to occasion constitutional violations – but said acts and omissions are also sufficiently harmful to evidence deliberate indifference to the serious medical needs of all inmates in their charge, including Plaintiff.

Case 5:22-cv-06009-BP   Document 2   Filed 01/18/22   Page 15 of 22

50.  Defendants' collective acts and omissions were not only intentionally willful, wanton, reckless, and malicious – in that they were the product of utilization management practices that elevate cost savings over prevailing medical practices and patient care – but they also evince a complete and deliberate indifference to and/or a conscious and reckless disregard of Plaintiff's rights.  Therefore, Plaintiff is entitled to an award of punitive or exemplary damages in an amount sufficient to punish said Defendants and deter others from engaging in like conduct in the future.

51.  Plaintiff is entitled to recover his reasonable attorney fees, costs, and expenses from Defendants as provided by 42 U.S.C. § 1988.

**COUNT II**
**FAILURE TO TRAIN/INADEQUATE TRAINING**
**42 U.S.C. § 1983**
**Against Defendants Corizon, L.L.C., Doe #1, Doe #2, and Doe #4**
**in their Individual and Official Capacities**

52.  Plaintiff hereby incorporates by reference paragraphs 1 through 51 as if fully set forth here.

53.  By operation of the MDOC/Corizon Contract and institutional and corporate policies and procedures, Defendants Corizon, Doe #1, #2, and #3 were vested with the duty to provide reasonable and adequate training to medical and nursing personnel assigned to the WMCC to prevent said personnel from:

a.  being deliberately indifferent to the serious medical needs of inmates;

b.  delaying and/or denying inmate access to qualified health care personnel; and,

c. failing to provide inmates with adequate medical care and treatment.

This duty extended to all inmates confined to the WMCC, including Plaintiff.

16

54. Defendants Corizon, Doe #1, Doe #2, and Doe #3 failed to provide reasonable and adequate training for medical and nursing personnel assigned to the WMCC as mandated by the MDOC/Corizon Contract and institutional and corporate policies and procedures. This failure, which was tacitly authorized by Defendants Corizon, Doe #1, Doe #2, and Doe #3, was so persistent and widespread that it constituted official policy and action.

55. The failure of Defendants Corizon, Doe #1, Doe #2, and Doe #3 to provide such training not only resulted in the five systemic deficiencies listed in Paragraph 46, but it also recklessly posed substantial risks of serious harm to the health and safety of all inmates confined to the WMCC, including Plaintiff, because it operated to deprive them of their Eighth Amendment rights. This failure comprised the moving force behind the violation of Plaintiff's constitutional rights.

56. But for the failure of Defendants Corizon, Doe #1, Doe #2, and Doe #3 to provide reasonable and adequate training for medical and nursing personnel assigned to the WMCC, Plaintiff's constitutional rights would not have been violated and he would not have been injured.

57. As set forth more specifically in Paragraph 48, Plaintiff has been damaged as a direct and proximate result of Defendants Corizon, Doe #1, Doe #2, and Doe #3's failures and official actions.

58. Defendants Corizon, Doe #1, Doe #2, and Doe #3's official acts and omissions were not only intentionally willful, wanton, reckless, and malicious – in that they are the product of corporate utilization management practices that elevate cost savings over prevailing medical practices and patient care – but they also evince a complete and deliberate

17

indifference to and/or a conscious and reckless disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to an award of punitive or exemplary damages in an amount sufficient to punish said Defendants and deter others from engaging in like conduct in the future.

59. Plaintiff is entitled to recover his reasonable attorney fees, costs, and expenses from Defendants as provided by 42 U.S.C. § 1988.

**COUNT III**
**FAILURE TO SUPERVISE, DIRECT AND CONTROL/**
**INADEQUATE SUPERVISION, DIRECTION, AND CONTROL**
**42 U.S.C. § 1983**
**Against Defendants Corizon, L.L.C., Doe #1, Doe #2, and Doe #4**
**in their Individual and Official Capacities**

60. Plaintiff hereby incorporates by reference paragraphs 1 through 59 as if fully set forth here.

61. By operation of the MDOC/Corizon Contract and institutional and corporate policies and procedures, Defendants Corizon, Doe #1, Doe #2, and Doe #3 were vested with the duty to provide reasonable and adequate training to medical and nursing personnel assigned to the WMCC to prevent said personnel from:

      a. being deliberately indifferent to the serious medical needs of inmates;

      b. delaying and/or denying inmate access to qualified health care personnel; and,

      c. failing to provide inmates with adequate medical care and treatment.

This duty extended to all inmates confined to the WMCC, including Strickland.

62. Defendants Corizon, Doe #1, Doe #2, and Doe #3 failed to adequately supervise, direct, and control medical and nursing personnel assigned to the WMCC as mandated by the MDOC/Corizon Contract and institutional and corporate policies and procedures. This

18

failure, which was tacitly authorized by Defendants Corizon, Doe #1, Doe #2, and Doe #3, was so persistent and widespread that it constituted official policy and action.

63. The failure of Defendants Corizon, Doe #1, Doe #2, and Doe #3 to provide such training not only resulted in the five systemic deficiencies outlined in Paragraph 46, above, but it also recklessly posed substantial risks of serious harm to the health and safety of all inmates confined to the WMCC, including Plaintiff, because it operated to deprive them of their Eighth Amendment right to be free from cruel and unusual punishment and the unnecessary and wanton infliction of pain. This failure comprised the moving force behind the violation of Strickland's constitutional rights.

64. But for the failure of Defendants Corizon, Doe #1, Doe #2, and Doe #3 to reasonably and adequately supervise, direct, and control medical and nursing personnel assigned to the WMCC, Plaintiff's constitutional rights would not have been violated and he would not have been injured.

65. As set forth more specifically in Paragraph 48, above, Plaintiff has been damaged as a direct and proximate result of Defendants Corizon, Doe #1, Doe #2, and Doe #3's failures and official actions.

66. Defendants Corizon, Doe #1, Doe #2, and Doe #3's official acts and omissions were not only intentionally willful, wanton, reckless, and malicious – in that they are the product of corporate utilization management practices that elevate cost savings over prevailing medical practices and patient care – but they also evince a complete and deliberate indifference to and/or a conscious and reckless disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to an award of punitive or exemplary damages in an amount sufficient to

punish said Defendants and deter others from engaging in like conduct in the future.

67.  Plaintiff is entitled to recover his reasonable attorney fees, costs, and expenses from Defendants as provided by 42 U.S.C. § 1988.

**COUNT IV**
**EIGHTH AMENDMENT**
**DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED**
**AND FAILURE TO PROVIDE MEDICAL CARE AND TREATMENT**
**42 U.S.C. § 1983**
**Against Defendant Bredeman in his Individual Capacity**

68.  Plaintiff hereby incorporates by reference paragraphs 1 through 67 as if fully set forth here.

69.  By virtue of his position and his duties, Defendant Bredeman not only had access to inmate MARS records and Health Record files mandated by IS11-60, but he routinely reviewed the same while investigating medical grievance appeals filed by inmates, including those filed by inmates confined to the WMCC.

70.  Plaintiff filed multiple medical grievances related to his back pain, including: GA-19-1308; GA-19-1527; GA-19-1616; and GA-20-325.  These grievances were all pursued through the Grievance Appeal.

71.  Upon information and belief, Defendant Bredeman reviewed Plaintiff's MARS records and Health Record files as a matter of course and was personally aware of both the clinical history of a conservative treatment regimen that had failed and the extent to which Plaintiff's physical abilities had deteriorated during that time.

72.  Despite the risk of further harm to Plaintiff, of which Defendant Bredeman was aware, he ratified the denial of Plaintiff's request for further assessment and treatment in each of the grievances listed in Paragraph 70.

73. Defendant Bredeman's denial reached the level of deliberate indifference and precipitated Plaintiff's constitutional injury.

74. As a direct and proximate result of Defendant Bredeman's violation of his civil rights, Plaintiff suffered the injuries set forth more specifically in Paragraph 48.

75. Defendant Bredeman's denial was not only intentionally willful, wanton, reckless, and malicious, but it also evinces a complete and deliberate indifference to and a conscious and reckless disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to an award of punitive or exemplary damages in an amount sufficient to punish Defendant Bredeman and/or to deter him and others from like conduct in the future.

76. Plaintiff is entitled to recover his reasonable attorney fees, costs, and expenses from Defendants as provided by 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court, after a trial by jury of his claims, enter judgment against Defendants for such actual and compensatory damages, nominal damages, and exemplary or punitive damages as are proven at trial; for his reasonable attorney fees, costs, and expenses incurred herein; and for such other legal and equitable relief as the Court may deem just and appropriate.

Respectfully submitted,

LAW OFFICE OF ARTHUR A. BENSON II

By  s/ Arthur A. Benson II

By s/ Jamie Kathryn Lansford

Arthur A. Benson II #21107
Jamie Kathryn Lansford #31133
4006 Central Avenue
Kansas City, Missouri 64111
(816) 531-6565
(816) 531-6688 (telefacsimile)
abenson@bensonlaw.com
jlansford@bensonlaw.com

and

THE LEATHERWOOD FIRM, LLC


By  D. Adam Leatherwood
D. Adam Leatherwood   #58280
P.O. Box 482235
Kansas City, Missouri 64148-2235
(816) 377-2055
(816) 377-3811 (eFax)
aleatherwood@gmail.com

Attorneys for Plaintiff Kevin Strickland

22